IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

STAY THE COURSE
WEST VIRGINIA, et al.,

                Plaintiffs,

v.                                           CIVIL ACTION NO.   1:12-cv-01658

NATALIE E. TENNANT, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the following motions filed by Plaintiffs Stay the Course West Virginia, Pineville Lumber, Inc., David Bailey, and Thomas Stephen Bailey ("Plaintiffs"): (1) Motion for Class Certification [Docket 3]; (2) Motion for Preliminary Injunction [Docket 15]; and (3) Motion for Expedited Consideration of Class Certification Motion [Docket 18].  For the reasons stated below, the Motion for Preliminary Injunction [Docket 15] is **GRANTED**.  The Court finds it unnecessary to rule on the motion for class certification at this time, finding that injunctive relief will adequately protect the interests of the plaintiffs at this juncture of the case.

*I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY*

Plaintiffs in this case are: (1) Stay the Course West Virginia ("STCWV"), an independent expenditure political action committee ("PAC") that is not affiliated with any candidate for office or political party; (2) David Bailey, the chairman and treasurer of STCWV; (3) Pineville Lumber, Inc., a West Virginia corporation seeking to contribute money to STCWV; and (4) Thomas

Stephen Bailey, an individual seeking to contribute money to STCWV. (Docket 1 at 3-4.) Defendants are West Virginia Secretary of State Natalie Tennant and Mercer County Prosecuting Attorney Scott Ash, named "as a representative of the class of all West Virginia Prosecuting Attorneys." (*Id.* at 1, 4.) Plaintiffs have requested that the prosecuting attorneys for West Virginia be certified as a defendant class pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Docket 3.) The Court finds it unnecessary to rule on the motion for class certification at this time, finding that injunctive relief directed to the named Defendants will adequately protect the interests of Plaintiffs at this juncture of the case. *See West Virginians for Life, Inc. v. Smith*, 919 F. Supp. 954, 955-56 (S.D. W. Va. 1996) (reaching same conclusion).

STCWV was organized with the sole purpose of soliciting and receiving contributions to make independent expenditures with respect to the 2012 general election cycle. (Docket 1 at 4.) Under West Virginia's election code, an "independent expenditure" is any expenditure "[e]xpressly advocating the election or defeat of a clearly identified candidate . . . not made in concert or cooperation with or at the request or suggestion of such candidate, his or her agents, the candidates authorized political committee or a political party committee or its agents." W. Va. Code § 3-8-1a(15). STCWV has as its goal to support business-friendly incumbent candidates for statewide office and to oppose challenger-candidates. (Docket 1 at 4; Docket 1-2 at 8.) STCWV is not affiliated with any candidate, political party, or candidate or party committee; it is an independent PAC seeking to promote its own agenda. Pineville Lumber is a West Virginia corporation seeking to contribute $5,000 to STCWV. (Docket 1 at 3.) Thomas Bailey is a West Virginia resident seeking to contribute $1,200 to STCWV. (*Id.*) David Bailey is the chairman of STCWV, and he wishes to solicit contributions in excess of $1,000. (*Id.*) The President of

2

Pineville Lumber and both Baileys have submitted affidavits indicating their desire to engage in this activity but expressing their concern that such actions would subject them to criminal penalties under West Virginia law. (Docket 1-2 at 7-14.) Currently, the election code imposes criminal penalties for either: (1) making a contribution in excess of $1,000 "in connection with or on behalf of any person engaged in furthering, advancing, supporting or aiding the nomination or election of any candidate for any of the offices," W. Va. Code § 3-8-12(f); or (2) accepting, as a PAC, "contributions totaling more than $1,000 from any one person prior to the primary election and contributions totaling more than $1,000 from any one person after the primary and before the general election," § 3-8-12(g).

According to Plaintiffs, in the wake of *Citizens United v. FEC*, 599 U.S. ___, 130 S. Ct. 876 (2010), West Virginia's $1,000 contribution limit is unconstitutional as applied to independent expenditure PACs, such as STCWV. (Docket 16 at 6-8.) Their rationale is that *Citizens United* held that no government interest sufficiently justifies limitations on corporate or PAC independent expenditures, so there can be no government interest sufficient to limit contributions to independent expenditure PACs, either. (*Id.*) Secretary Tennant responds that there is indeed an anti-corruption interest at play in West Virginia's election code, and she argues that such interest is sufficient to uphold the contribution limit as applied to independent expenditure PACs such as STCWV. (Docket 21 at 5-7.) Notably, Secretary Tennant dedicates a large portion of her response brief to a recitation of the circumstances under which the Supreme Court heard and decided *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

In the complaint, Plaintiffs challenge several provisions of West Virginia law, making three overall arguments. First, Plaintiffs challenge West Virginia Code of State Rules §§

3

146-1-3.1, 146-1-3.2, and 146-1-6.2 as in conflict with West Virginia Code § 3-8-8(a) & (b). The statute prohibits corporate contributions to "any candidate or candidate's campaign," but the regulations purport to prohibit corporations from making "a[ny] contribution or expenditure . . . whatsoever in connection with" a campaign. Obviously, the regulations reach a broader swath of political speech, and Plaintiffs challenge them as inconsistent with statute and constitutional law. In her answer, Secretary Tennant admits that to the extent the regulations conflict with Code § 3-8-8, the statute controls and the regulations are unenforceable. (Docket 11 at 6.) The first challenge is therefore moot.

Second, Plaintiffs challenge a manual issued by Secretary Tennant, entitled "2012 Running for Office in West Virginia," as violating West Virginia Code § 3-8-2(b). The statute permits independent expenditures by corporations for the purpose of expressly advocating the election or defeat of a candidate for political office. However, the manual is at odds with the statute, stating that corporations may not make direct expenditures to support or oppose candidates for statewide office. In her answer to Plaintiffs' complaint, Secretary Tennant states that the manual is "provided as information for the public and not intended as [a] statement[ ] of policy." (Docket 11 at 4.) The second challenge is therefore moot.

Finally, Plaintiffs challenge several subsections of West Virginia Code § 3-8-12, as well as § 146-3-5.2 of the Code of State Rules, all of which prohibit individuals (and corporations by virtue of the election code's definitions) from contributing more than $1,000 to PACs and PACs from accepting such contributions in excess of $1,000. Specifically, the challenged statute provides as follows:

> (f) Except as provided in section eight of this article, *a person may not, directly or indirectly, make any contribution in excess of the value of $1,000* in connection

4

> with any campaign for nomination or election to or on behalf of any statewide office, in connection with any other campaign for nomination or election to or on behalf of any other elective office in the state or any of its subdivisions, or *in connection with or on behalf of any person engaged in furthering, advancing, supporting or aiding the nomination or election of any candidate for any of the offices*.
>
> (g)  A political organization (as defined in Section 527(e)(1) of the Internal Revenue Code of 1986) [PAC] may not solicit or accept contributions until it has notified the Secretary of State of its existence and of the purposes for which it was formed. During the two-year election cycle, *a [PAC] may not accept contributions totaling more than $1,000 from any one person prior to the primary election and contributions totaling more than $1,000 from any one person after the primary and before the general election*.
>
> . . . .
>
> (n)  Any person violating any provision of this section is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or confined in jail for not more than one year, or, both fined and confined.
> . . . .
>
> (p)  The limitations on contributions established by subsection (g) of this section do not apply to contributions made for the purpose of supporting or opposing a ballot issue, including a constitutional amendment.

W. Va. Code § 3-8-12 (emphasis added).

Although Plaintiffs will ultimately seek a declaratory judgment from this Court, they currently seek only a preliminary injunction to preclude the enforcement of § 3-8-12. Plaintiffs and Secretary Tennant appeared before the Court by counsel on August 1, 2012, to argue the pending motions. (Docket 24.)

## II. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, the Court must balance the competing claims of injury and consider the effect of granting or

withholding the requested relief, paying particular regard to the public consequences. *Weinberger v. Romero-Barcelo*, 456 U. S. 305 (1982).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). The plaintiff must demonstrate a *likelihood* of irreparable harm without a preliminary injunction; a mere *possibility* of harm will not suffice. *Id.* at 21. And "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Romero-Barcelo*, 456 U. S. at 312.

Regarding likelihood of success, prior law in the Fourth Circuit was that there is a "'flexible interplay' among all the factors considered . . . for all four [factors] are intertwined and each affects in degree all the others." *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977) (citations omitted). Accordingly, plaintiffs were not strictly required to demonstrate likelihood of success on the merits; rather, "it [was] enough that grave or serious questions on the merits are presented." *Id.* But in the wake of the Supreme Court decision in *Winter v. NRDC*, the *Blackwelder* balancing approach "may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009) (*RTAO I*), *vacated on other grounds*, 130 S. Ct. 2371 (2010) *and adhered to in part sub nom. Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010) (*RTAO II*). Instead, the Fourth Circuit has held that a party seeking the preliminary

6

injunction must demonstrate by "a clear showing that it is likely to succeed at trial on the merits." *RTAO I*, 575 F.3d at 351. The Fourth Circuit has not expressly required that a movant prove success on the merits is "more likely than not" in order to meet the requirement of a clear showing, but the new requirement "is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious question for litigation." *Id.* at 345-46.

### III. DISCUSSION

*A. Likelihood of Success on the Merits*

Plaintiffs argue that they are likely to succeed in their as-applied First Amendment challenge to West Virginia Code § 3-8-12 because a logical extension of *Citizens United* prohibits any limitation on monetary contributions to independent expenditure PACs. (Docket 16 at 5-7.) Secretary Tennant responds that West Virginia's contribution limit withstands constitutional scrutiny in this case as a valid effort by the Legislature to combat corruption and the appearance of corruption in statewide elections. (Docket 21 at 2-5.)

Since *Buckley v. Valeo*, the Supreme Court has distinguished between restrictions on political contributions and restrictions on expenditures for political speech. 424 U.S. 1, 15 (1976). Although limitations on campaign contributions "operate in an area of the most fundamental First Amendment activities," they generally entail "only a marginal restriction upon the contributor's ability to engage in free communication." *Id.* at 15, 20. Consequently, courts considering the validity of contribution limitations should apply "closely drawn scrutiny," which asks whether the law is "closely drawn" to match a "sufficiently important government interest." *Randall v. Sorrell*, 548 U.S. 230, 247 (2006) (citing *Buckley*, 424 U.S. at 25). Although the *Buckley* Court upheld the contribution limitations at issue in that case, it recognized that

"contribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy." 424 U.S. at 24.

To determine whether West Virginia's contribution limitation survives "closely drawn scrutiny," the Court first endeavors to identify a "sufficiently important government interest" at play in the statute. In *Citizens United*, the Supreme Court determined that there exists only one government interest sufficiently important to outweigh the First Amendment interests implicated by contributions for political speech: preventing corruption or the appearance of corruption. *See* 130 S. Ct. at 904-08, 911 (considering and rejecting other asserted government interests); *see also Davis v. FEC*, 554 U.S. 724, 740-41 & n.7 (2008) (rejecting so-called "anti-distortion rationale"). And the *Citizens United* Court, although dealing with expenditures rather than contributions, squarely held that the government has no anti-corruption interest in limiting independent expenditures. *Id.* at 909-10. Specifically, the Court rejected a provision of the Bipartisan Campaign Reform Act of 2002 that made it unlawful for any corporation or union to use general treasury funds to make independent expenditures or expenditures for "electioneering communications," which are defined as political ads airing shortly before a general or primary election. *Id.* at 897, 911. The Supreme Court declared the expenditure ban unconstitutional, holding "that corporations may not be prohibited from spending money for express political advocacy when those expenditures are independent from candidates and uncoordinated with their campaigns." *SpeechNow.org v. FEC*, 599 F.3d 686, 693 (D.C. Cir. 2010) (summarizing *Citizens United* decision). In no uncertain terms, the *Citizens United* Court stated: "[W]e now conclude

that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption." 130 S. Ct. at 909.

From this holding, the D.C. Circuit, since joined by the Seventh and Ninth Circuits, has held that "because *Citizens United* holds that independent expenditures do not corrupt or give the appearance of corruption as a matter of law, then the government can have no anti-corruption interest in limiting contributions to independent expenditure-only organizations. . . . [T]he limits on contributions to [independent expenditure PACs] cannot stand." *SpeechNow*, 599 F.3d at 696; *see also Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 154 (7th Cir. 2011) ("[A]s a matter of law and logic, Wisconsin's . . . contribution limit is unconstitutional as applied to . . . [independent expenditure PACs]. This is true even though the statute limits contributions, not expenditures. Whether strict scrutiny or the intermediate 'closely drawn' standard applies, the anticorruption rationale cannot serve as a justification for limiting fundraising by groups that engage in independent spending on political speech. No other justification for limits on political speech has been recognized, and none is offered here."); *Long Beach Area Chamber of Commerce v. Long Beach*, 603 F.3d 684, 696-98 (9th Cir. 2010) (rejecting government's proffered interests in similar contribution limits).

The Fourth Circuit reached this same conclusion, although in a pre-*Citizens United* decision. The relevant excerpt speaks for itself:

> Importantly, however, the [Supreme] Court has never held that it is constitutional to apply contribution limits to political committees that make solely independent expenditures. In fact, Justice Blackmun stressed in his *Cal-Med* concurrence that "contributions to a committee that makes only independent expenditures pose no . . . threat" of corruption or the appearance thereof. *See Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 203 (1981) (Blackmun, J., concurring). This makes perfect sense: independent expenditures are made without candidate consultation, rendering it unlikely that such expenditures would be made in exchange for "improper

9

> commitments from the candidate." *Buckley*, 424 U.S. at 47 (noting that "independent expenditures may well provide little assistance to the candidate's campaign and indeed may prove counterproductive").
>
> Moreover, *McConnell* specifically emphasized the difference between political parties and independent expenditure political committees, which explains why contribution limits are acceptable when applied to the former, but unacceptable when applied to the latter. To begin, the Court noted that independent expenditure committees "do not select slates of candidates for elections," "determine who will serve on legislative committees, elect congressional leadership, or organize legislative caucuses." *McConnell v. FEC*, 540 U.S. 93, 188 (2003). Conversely, "[p]olitical parties have influence and power in the Legislature that vastly exceeds that of any interest group." *Id.* Furthermore, "party affiliation is the primary way . . . voters identify candidates," and therefore parties "have special access to and relationships with" those who hold public office. *Id.* It is thus not an exaggeration to say that *McConnell* views political parties as different in kind than independent expenditure committees.
>
> Thus, while the state's power to impose contribution limits is well-established, that power exists only when the contribution limits are "closely drawn" to the state's interest in preventing corruption. As the state attempts to regulate entities further and further removed from the candidate, the state interest in preventing corruption necessarily decreases. At the extreme, the entities furthest removed from the candidate are political committees that make solely independent expenditures. As such, it is "implausible" that contributions to independent expenditure political committees are corrupting. *N.C. Right to Life, Inc. v. Leake*, 344 F.3d 418, 434 (2003).

*N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 292-93 (2008).

The Seventh Circuit aptly explained how this conclusion, now reached by four courts of appeals, short-circuits such laws and simplifies the Court's analysis: "Without an anticorruption rationale, the government [is] left empty-handed; . . . as applied to independent expenditure groups, the . . . contribution limit [is] unjustified under [any standard of review] because 'something . . . outweighs nothing every time.'" *Barland*, 664 F.3d at 154 (quoting *SpeechNow*, 599 F.3d at 695). In other words, the Court need go no further. The government has no interest in maintaining the contribution limit as applied to Plaintiffs, and Plaintiffs certainly have some level of First Amendment interest in soliciting, receiving, and making contributions for

10

independent expenditures. The Court therefore **FINDS** that Plaintiffs are very likely to succeed in their as-applied challenge to § 3-8-12 of the West Virginia Code.

### B. *Likelihood of Suffering Irreparable Harm*

Plaintiffs assert that they are likely to suffer irreparable harm without the entry of a preliminary injunction, citing the loss of First Amendment freedoms as per se irreparable harm. (Docket 16 at 7-8.) Secretary Tennant responds that, even if they are likely to succeed on the merits, Plaintiffs are unlikely to suffer any real harm without a preliminary injunction. (Docket 21 at 4.) She reasons that "[t]he West Virginia law does not block the Plaintiffs' ability to show support for, or opposition to, one or more candidates in the upcoming election," and they will therefore suffer no harm from enforcing the contribution limit. (*Id.*) The Court disagrees.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). And "monetary damages are inadequate to compensate for the loss of First Amendment freedoms." *Id.* (citing *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004)). It is a "cardinal tenet" of the Supreme Court's campaign finance jurisprudence that political spending is constitutionally protected speech. *See Emily's List v. FEC*, 581 F.3d 1, 5 (D.C. Cir. 2009). More particularly, contribution limitations encroach upon First Amendment liberties because they "entail[ ] . . . restriction upon the contributor's ability to engage in free communication." *Buckley*, 424 U.S. at 20. Contributions "permit[ ] the symbolic expression of support," and they therefore fall within the realm of First Amendment protection. *Id.* at 21. To address the Secretary's response, the availability to Plaintiffs of other, less effective means of political expression does not entitle the

11

State of West Virginia to foreclose Plaintiffs' First Amendment right to pool their resources for the purpose of making concerted independent expenditures. Accordingly, the Court **FINDS** that Plaintiffs are likely to suffer irreparable injury to their First Amendment rights absent an injunction.

### C. Balance of Equities

As to the third preliminary injunction factor, Secretary Tennant argues that, on balance, West Virginia's interest in maintaining the integrity of its elections by eliminating actual and perceived corruption in elections outweighs any First Amendment interest Plaintiffs have in making contributions to independent expenditure PACs. (Docket 21 at 4-5.) As set forth above, West Virginia Code § 3-8-12 serves no anti-corruption interest. Thus, the Secretary's perceived harm to the State of West Virginia is illusory, and the balance of equities favors Plaintiffs' free speech rights. Further, the State of West Virginia is "in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club*, 637 F.3d at 302-03 (citing *Joelner*, 378 F.3d at 620). The Court **FINDS** that the balance of equities tips decidedly in favor of issuing a preliminary injunction.

### D. Public Interest

Finally, there is a significant public interest in upholding the free speech principles that are integral to our democratic society. Secretary Tennant argues that the state's interest in maintaining the legitimacy of its statewide elections is also in the public interest, and it justifies the burdens placed on Plaintiffs by the challenged statute. (Docket 21 at 5-6.) She relies a great deal on the *Caperton* decision to illustrate bias in West Virginia elections. However, *Caperton* dealt with the Fourteenth Amendment and recusal rules, not the First Amendment's free speech

guarantees. *See Citizens United*, 130 S. Ct. at 910 (distinguishing *Caperton*). Moreover, while ensuring the integrity of elections may be in the public interest, application of the statute at issue to independent expenditure PACs such as STCWV and its contributors does not further that goal. The Court **FINDS** that issuance of a preliminary injunction will serve the public interest.

### IV. CONCLUSION

For the reasons stated above, Plaintiffs are likely to succeed on the merits of their challenge to West Virginia Code § 3-8-12 and the corresponding regulations. Further, the balance of harms tips decidedly in favor of Plaintiffs and according them relief would serve the public interest. They are entitled to a preliminary injunction, and \the Motion for Preliminary Injunction [Docket 15] is hereby **GRANTED**. A separate Preliminary Injunction Order will enter this day implementing the ruling contained in this opinion.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 9, 2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE